626 P.2d 276

**Irene HUGHES, Plaintiff-Appellant,**

v.

**STATE of New Mexico ex rel. HUMAN SERVICES DEPARTMENT, Defendant-Appellee.**

**No. 4538.**

Court of Appeals of New Mexico.

Aug. 14, 1980.

Charles McCormack, Clovis, for plaintiff-appellant.

Richard Shapiro, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

OPINION

ANDREWS, Judge.

Appellant, Irene Hughes, was a recipient of AFDC and Medicaid benefits. Included in the calculations which determined her need for those benefits was a "shelter standard" which would be included if she paid *any* rent—whatever the amount. Appellant was also a recipient of Section 8 housing benefits (see 42 U.S.C. 1437f) which paid all but $22.00 of her rent, and any utility costs above $30.00. Rather than being distributed as separate payments, however, the Section 8 monies (for both utilities and rent) were combined. Twenty-two dollars of appellant's $30 utility allowance was paid directly to the landlord and the remaining $8.00 of the utility allowance was paid to appellant; appellant then paid all the utilities.

It is acknowledged by all parties that appellant is paying $22.00 of her own rent. Appellant argues:

in reality what is happening is that the Housing Authority is paying $53 out of $75 rent, and $30 out of $45 per month in utilities. If the Housing Authority actually paid the money in this manner, the Department would not be contending that Ms. Hughes does not have a shelter expense. Instead, however, for administrative convenience the authority pays $22 less for utilities.

*   *   *   *   *   *

In response, the Department states:

However, if the recipient does not actually pay any rent out of her pocket, the Department would be violating its own regulations by giving Ms. Hughes a shelter allowance.

Thus, the issue presented is whether § 221.822(B) of the Public Assistance Manual, Vol. II–A requires an actual out-of-pocket expense, or the existence of liability for rent—regardless how that liability is met. The section states:

221.822B. *Shelter*—If the family unit, living alone or with others, must meet an expense for shelter in the form of a rent charge * * * the budget group will be

budgeted the shelter standard for that size budget group * * * Shelter will be budgeted under the following circumstances:

1) *Rent*—The shelter standard will be budgeted when the family unit must pay rent in order to obtain shelter.

The clear wording of Section 221.822(B) of the Public Assistance Manual, Vol. II–A is that,

1) Rent—The shelter standard will be budgeted when the family unit *must pay rent in order to obtain shelter.* (Emphasis added.)

Exhibit E in the record is the form used to compute the Section 8 benefits payable to the appellant. Line 17 reads:

> 17. Net Amount payable by family
>     toward Gross Rent . . . . . . . . .    $22.00

Thus, the amount paid each month by the appellant for rent was $22.00. In addition to the subsidy the Section 8 program provided for rent, it also supplied funds for utilities. The problem arises because part of this utility money is paid directly to the landlord—creating the *appearance* that the appellant actually pays nothing to the landlord.

■ We are mindful of the fact that difficulty of administration is not a sufficient reason for denial of benefits under Aid to Families with Dependent Children. *Haceesa v. Heim*, 84 N.M.112, 500 P.2d 197 (Ct.App.1972). There the court stated:

> We are not impressed with the appellee's argument of the difficulty of administration of the individual program when having to compute [benefits]. Difficulty of administration is not a sufficient reason for denial of benefits. To follow appellee's reasoning would be to elevate form over substance.

This is analogous to the instant situation where appellee argues that if the payments had been made in the correct form, the net result would have been different. In effect, had the Section 8 payments been correctly labeled as "rent" and "utilities", there would have been no problem at all—a classic instance of form over substance.

■ The obvious purpose of the section in question is to assist a claimant whenever part of that person's total budget is being committed to rent. Ms. Hughes is undeniably such a person. As such is the case, Ms. Hughes should have been allowed the shelter standard in the computation of her eligibility.

The ruling of the Department is reversed.

IT IS SO ORDERED.

WOOD, C. J., concurs.

SUTIN, J., specially concurs.

SUTIN, Judge (specially concurring).

I concur.

An opinion which reverses the ruling of the Department is of benefit to Irene Hughes. But that which is most important are the unfair procedures used by the Department in every case wherein AFDC benefits are denied to recipients contrary to law.

The purpose of the AFDC program is to strengthen family life by providing a program of financial assistance to families that are in need of such assistance and services. In its answer brief, the Department states:

> The Department is sympathetic to Ms. Hughes argument. And if the Eastern High Plains Council Government in Clovis treated the Section 8 payment as other housing authorities do, this controversy would not arise. * * * Since the Department has no control over the manner in which the housing authority administers the Section 8 Program, it is bound by the authority's treatment. * * *

The "Eastern High Plains Council Government in Clovis" is a stranger to this proceeding. What "other housing authorities do" is an unknown factor. How "the housing authority administers the Section 8 Program," whatever that program is, has not been explained.

The Department's quarrel should be aligned with the Housing Authority and not with Ms. Hughes. The Housing Authority has led the Department down the wrong road and denied Ms. Hughes a fair hearing.

A. *The "Decision" of the Director is not subject to review.*

The "Fair Hearing Decision" is on a printed form. It contains the following:

*Report of Hearing Officer*

The Hearing Officer made the following findings of fact:

1. Section 8 Housing is paying all of the client's rent.

2. Her Shelter is supplied.

*Issue:*

Was the County correct in terminating the client's AFDC?

*Conclusions of Hearing Officer:*

Ms. Hughes' shelter is supplied. She cannot be allowed a shelter standard because Section 8 Housing pays her entire rent. Therefore, the County acted correctly in terminating the client's AFDC.

Each of the following statements were made by an "X" placed in sequence:

*The Hearing Officer:* "I recommend in favor of DEPT."

*Fair Hearing Review Committee:* "I recommend in favor of the DEPT."

*Director:* "Decided in favor of DEPT."

This is not a "Decision."

Section 27-3-3(D), N.M.S.A.1978 provides that "The director shall review the record of the proceedings and shall make a decision thereon."

In the appeal, when additional evidence is ordered, "The director may modify his findings and decision by reason of the additional evidence .... Section 27-3-4(D). I read this to mean that the Director is required to make findings in arriving at a decision.

The Director did not adopt the findings of the Hearing Officer. Nothing indicated that the Director reviewed the record. The Director simply followed the recommendations of the Hearing Officer and the Review Committee.

To constitute a "Decision," the record presented to this Court for review must indicate the reasoning of the Director and the basis on which he terminated AFDC. *Title Services, Inc. v. Commissioner of Revenue,* 86 N.M. 128, 520 P.2d 284 (Ct.App. 1974).

The "Decision" of the Director should be vacated and the cause remanded to the Director to review the record and state his reasoning and the basis on which he terminated AFDC.

B. *The recipient did not receive a fair hearing.*

If we accept the Fair Hearing Decision of the Director for review, we turn to the record.

A formal printed notice was sent to Irene Hughes that, effective December 1, 1979, the Human Services Department would:

\* \* \* \* \* \*

b. TERMINATE your FINANCIAL assistance in the amount of *$9.00.*

c. TERMINATE your MEDICAL assistance.

\* \* \* \* \* \*

2. The reason(s) for this proposed action is/are: your rent is supplied, *therefore you cannot be allowed a shelter expense amount.* In removing this amount from your welfare grant, your son's social security benefits are over the total requirements for a family of your size, therefore your case will be closed effective 12/01/79.

3. The appropriate rule or regulation applicable in this proposed action is: 221.822 and 221.832.

No recipient, such as Irene Hughes, could understand the meaning of this notice. All that is involved is the sum of $9.00 and termination of medical assistance. What is a "Shelter Expense Amount"? What are regulations 221.822 and 221.832? The regulations adopted are so vast, complex, vague and unintelligible that no recipient could hope to find them or if found, understand the language used.

It is with this notice that Irene Hughes walked into a "Fair Hearing." Absent an adequate notice, the hearing was neither fair nor valid.

What are the issues at the hearing? Section 27-3-3(C) reads in pertinent part:

* * * The hearing shall be conducted so that the contentions or defenses of each party to the hearing are amply and fairly presented. * * *

What are "the contentions and defenses of each party"? The contentions of the Department are, as stated in the notice, that Irene Hughes' financial assistance in the amount of $9.00 and her medical assistance shall terminate December 1, 1979. The Hearing Officer said:

> * * * On her behalf, we request a hearing on the decision by your office to terminate Ms. Hughes' financial and medical assistance.

Neither of those contentions were mentioned during the few questions asked at what is called a "Hearing."

The only testimony presented by the county was that of the county caseworker. She said:

> On the budget sheet it says that the shelter is supplied and that the client makes no payment. That results in a zero for shelter. Utilities—the client pays the utilities so we give her $21 utility deduction. On basic requirements we give for two people which is $94.00. The result of this is $115. David's OASDI check is $154.30, and $115 minus $154 results in no deficit.

Irene Hughes testified that her utility bills were about $45 and her average utility bills were about $50, and that she paid no rent.

From this testimony, the Hearing Officer made findings and conclusions, together with a recommendation to the Director, which, in effect, was the "decision" of the Director. He concluded that "The county acted correctly in terminating the client's AFDC," not the amount of $9.00. Perhaps this amount was an error. Nevertheless, no such authority was granted the Hearing Officer by law. Section 27–3–3(C) provides that:

> The hearing shall be conducted by a hearing officer designated by the director. The powers of the hearing officer shall include: administering oaths or affirmations to witnesses called to testify; taking testimony; examining witnesses; admitting or excluding evidence; and re-opening any hearing to receive additional evidence. * * *

To "conduct a hearing" means that the hearing officer will manage, direct, lead, carry on or regulate the hearing.

The Hearing Officer was a gatherer of evidence to present to the Director. "The director shall review the record of the proceedings and shall make a decision thereon." Section 27–3–3(D). This the director did not do.

Irene Hughes did not receive a fair hearing.

The sole issue raised in this appeal was stated in pertinent part as follows:

> [T]he recipient does meet an expense for shelter in the form of a rent charge within the meaning of Section 221.822B. * *

Section 221.822 provides:

> Where shelter or utilities are provided in part, the standards will be budgeted if the family unit has any expense for that item.

The rental agreement states that the landlord shall "(4) Supply running water and a reasonable amount of hot water at all times." It also provides that "The owner shall furnish the following utilities: So State:—None." This contradiction is one of many positions taken by the Department.

Irene Hughes paid no rent out of her pocket but she did pay an average of about $50 a month for utilities. Since she paid a "form of rent charge," she was entitled to AFDC benefits.